UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NOEMI MENDOZA, et al.,
Plaintiffs,

v.

KELLY SANTORO, et al.,
Defendants.

Case No. 25-cv-10868-NW

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: ECF No. 21

On the morning of October 14, 2025, while incarcerated at Salinas Valley State Prison ("SVSP") in Soledad, California, Israel M. Mendoza ("Mendoza"), was attacked by another inmate with a deadly weapon. After prison officials intervened, they returned Mendoza to general population housing. That evening, Mendoza was attacked by a different inmate who used a deadly weapon to kill Mendoza.

Plaintiff Noemi Mendoza, Israel M. Mendoza's wife, and Mendoza's estate ("Plaintiffs") filed suit asserting that SVSP Warden Kelly Santoro, Sergeant E. Lopez Vargas, and Does 1–50 (various SVSP employees identified by title) (collectively "Defendants"). Plaintiffs allege five causes of action stemming from their claim that Defendants were deliberately indifferent to Mendoza's substantial risk of serious harm while incarcerated at SVSP, in violation of federal and state law.

Defendants now move to dismiss Plaintiffs' second amended complaint ("SAC") for failure to state claims under Federal Rules of Civil Procedure 12(b)(6) and 8. ECF No. 21. The motion is now fully briefed. *See* ECF Nos. 22, 24. The Court heard oral argument on October 30, 2026. The Court GRANTS IN PART with leave to amend, and DENIES IN PART Defendant's motion to dismiss.

United States District Court
Northern District of California

## I. BACKGROUND[1]

On December 3, 2015, Mendoza was received into California Department of Corrections and Rehabilitation ("CDCR") to serve "a 14-year sentence for corporal injury on a specific person within seven years of a prior specific conviction and false imprisonment with violence as a second striker." SAC ¶ 39. During his incarceration, Mendoza was assaulted at least three times at three different prisons, and these assaults were documented in his central file with CDCR.

Mendoza was formerly affiliated with the "Nuestra Familia/Norteno" prison gang but renounced his membership after the gang fractured. Mendoza's CDCR file documented him as a "validated or suspected Nuestra Familia/Norteno dropout." *Id.* ¶ 30. This documentation was available to staff at SVSP, and Plaintiffs allege Mendoza's "dropout" status should have informed SVSP's housing decisions. Mendoza's central file also contained write-ups issued to Mendoza for refusing cellmates because he expected that "they would eventually betray him and that conflicts would arise." *Id.* ¶ 45.

Plaintiffs assert that as a dropout, Mendoza faced a standing, diffuse threat from all active prison gang members, including both former allies from his gang who viewed him as a traitor, as well as inmates affiliated with the rival gang "Mexican Mafia/Sureno," who viewed Mendoza as a weakened enemy. Plaintiffs contend that any active Nuestra Familia/Norteno or Mexican Mafia/Sureno gang member on the yard was therefore a foreseeable, deadly threat to Mendoza.

Plaintiffs maintain that Mendoza's killing was part of a pattern of violence at SVSP, citing seven inmate homicides in the two years leading up to Mendoza's death. Plaintiffs claim all these killings, including Mendoza's, share common features: they were carried out with inmate-made weapons, attacks took place in common areas or cells, the attackers had documented histories of violence, and the victims were "vulnerable due to their criminal history, gang status, or prior conflicts." *Id.* ¶ 52. Plaintiffs state that this trend continued, citing two other inmates who were killed at SVSP within two months of Mendoza's death. Plaintiffs further assert this pattern extended to other CDCR prisons. In March 2025, CDCR placed SVSP and ten other prisons

[1] The background facts are drawn from the SAC, ECF No. 16.

under heightened security protocols due to "a surge in violence against staff and incarcerated persons." *Id.* ¶ 55. In June 2025, CDCR expanded to 21 the number of prisons subject to the heightened security protocols.

On the morning of October 14, 2025, an inmate named Edmonds attacked Mendoza in the SVSP yard "using an inmate-manufactured weapon (commonly known as a 'shank')." *Id.* ¶ 61. To stop the attack, prison staff deployed one "40mm Direct Impact Sponge Round." *Id.* ¶ 62. While this use of force was documented in an incident tracking report, Plaintiffs contend that Defendants failed to conduct a mandatory use of force investigation, which would have required placing Mendoza in restricted housing to protect him from further harm following the attack. Instead of conducting the required investigation, Plaintiffs allege Defendant Lopez Vargas improperly "unilaterally processed Compatibility Chronos and returned Mr. Mendoza to general population without the multi-level review process mandated for use of force incidents." *Id.* ¶ 65. The Compatibility Chronos stated that Mendoza and Edmonds "agreed that [the attack] was a misunderstanding," and that they could "continue to co-exist on the facility." *Id.* ¶ 68.

At 5:15 p.m. on the same day, an inmate named Orlando M. Ochoa attacked Mendoza. Prison staff responded by "utilizing chemical agents to stop the attack and restrain Ochoa." *Id.* ¶ 72. The staff "began live-saving measures on Mr. Mendoza" and called 9-1-1. *Id.* Mendoza was transported to the prison's triage and treatment area where paramedics pronounced his death at 5:52 p.m.

Plaintiffs allege that Ochoa's file documented his Mexican Mafia/Sureno affiliation, that CDCR knew he had a violent criminal history, and that CDCR knew Ochoa posed a threat to prison gang dropouts like Mendoza. Plaintiffs state that Ochoa's violent background and gang affiliation "should have informed all housing decisions at SVSP." *Id.* ¶ 76. They allege Ochoa's attack on Mendoza was "the foreseeable result of placing a vulnerable gang dropout on a yard with active gang members who viewed him as a target." *Id.* ¶ 77.

Plaintiffs filed this action on December 19, 2025. ECF No. 1. Plaintiffs amended their complaint on March 2, 2026 (ECF No. 13), and again on April 24, 2026 (ECF No. 16). The SAC alleges five causes of action against (various subsets or all) Defendants Warden Kelly Santoro,

Sergeant E. Lopez Vargas, and Does 1–50, described as various employees of CDCR and SVSP, for: (1) deliberate indifference to serious risk of harm (Eighth Amendment; 42 U.S.C. § 1983); (2) personal liability for deliberate indifference for failure to train, enforce, and correct known constitutional violations (Eight Amendment; 42 U.S.C. § 1983); (3) negligence for failure to protect (Cal Gov. Code, §§ 815.2 and 820; Cal. Civ. Code, § 1714(a)); (4) wrongful death (Cal. Code Civ. Proc., § 377.60); and (5) survival action (al. Code Civ. Proc., § 377.30).

Defendants now move to dismiss Plaintiffs' complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 8. ECF No. 21 ("Motion").

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory, or (2) an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Navarro*, 250 F.3d at 732)) (quotation marks omitted). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Put differently, the plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). And even where a defendant's identity is unknown prior to the filing of the complaint, "a plaintiff must still meet the pleading requirements of *Twombly* and *Iqbal*." *Gillespie v. Torres*, No. 20-CV-03735-DMR, 2020 WL 6710090, at *5 (N.D. Cal. Nov. 16, 2020).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul fire & Marine Ins. Co.*,

519 F.3d 1025, 1031. But a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**B. Rule 8**

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Accordingly, a pleading must 'give[] fair notice and state[] the elements of the claim plainly and succinctly.'" *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A complaint is subject to dismissal when it fails to comply with the requirements of Rule 8. *See Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981).

**III. DISCUSSION**

Defendants argue that all Plaintiffs' claims should be dismissed for failure to allege causation. Motion, at 14. The Court addresses that argument as to all claims before turning to Defendants' claim-specific arguments.

**A. Causation**

All five of Plaintiffs' claims require, among other elements, an allegation of causation—here, that Defendants caused the circumstances that led to Mendoza's death. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (a plaintiff states a claim under section 1983 where the defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation" of the constitutional right alleged); *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) ("To establish a cause of action for negligence [under California law], the plaintiff must show," among other things, "that the breach was the proximate or legal cause of the resulting injury."); *Musgrove v. Silver*, 82 Cal. App. 5th 694, 705 (2022), as modified on denial of reh'g (Sept. 13, 2022) (to state a claim for wrongful death, the plaintiff must allege negligence by the defendant that *causes* the death of another); *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1264 (2006) (a survivor cause of action prevents the abatement of the claims of the injured person after their death).

Defendants argue that Plaintiffs' complaint fails to establish that when Edmonds attacked

Mendoza in the morning, it "would have identified Ochoa as an imminent threat to Mendoza's safety and thus produced a different housing decision before 5:15 p.m. the same day." Motion, at 14. Defendants claim that completing the Compatibility Chronos and separating Edmonds from the yard and placing him in administrative segregation sufficiently addressed the known threat to Mendoza's safety,[2] and that any threat to Mendoza's safety by a different inmate was unknown until Mendoza was attacked by Ochoa later the same day. *Id.* at 14–15.

But Plaintiffs' complaint does not allege that a single inmate presented a known threat to Mendoza. *See* SAC ¶ 46 ("This threat was not limited to any single inmate or gang faction."). Rather, Plaintiffs state that as a prison gang "dropout," Mendoza was vulnerable to attack by either members of his former prison gang, Nuestra Familia/Norteno, or members of a rival gang. SAC ¶ 46. According to the SAC, threats posed to Mendoza by rival gang members, like Edmonds and Ochoa, were foreseeable to prison officials because: (1) Mendoza's Nuestra Familia/Norteno gang history and dropout status, as well as Ochoa's rival Mexican Mafia/Sureno gang affiliation and violent history, were documented in their respective files; (2) prison officials knew there was a "persistent pattern of deadly violence" against inmates with particular "criminal history, gang status, or prior conflicts" at SVSP and in the California prison system generally, at the time; and (3) housing "a validated or suspected Southern California gang member on the same yard as a Northern California gang dropout violated CDCR's gang management and separation protocols." *Id.* ¶¶ 47–57; 75–77. With this information Plaintiffs allege that Defendants should have foreseen that Mendoza was vulnerable to a second attack but failed to remove him from the yard, and that Mendoza would not have been attacked a second time, and killed, but for Defendants' failure to protect him.[3] *Id.* ¶ 48.

---

[2] Plaintiffs point out that the complaint does not allege that Edmonds "was removed from the yard and placed in administrative segregation," as Defendants' motion claims. Motion, at 14; SAC ¶ 68 ("The Compatibility Chrono stated that both Mr. Mendoza and inmate Edmonds 'agreed that it was a misunderstanding' and that they 'can continue to co-exist on the facility.'"). Whether Edmonds was removed from Mendoza's presence, quelling the threat by Edmonds, is a factual dispute that the parties may raise after discovery, but the Court does not resolve it now.

[3] Whether Defendants are liable as a matter of law for their alleged failure to protect Mendoza from the attack by Ochoa is a separate question that the Court addresses as to particular claims later in this Order.

Plaintiffs' allegations are sufficient to assert causation for all claims at the motion to dismiss stage. *See Manzarek*, 519 F.3d at 1031. The Court accordingly declines to dismiss Plaintiffs' claims for lack of causation.

**B. Section 1983 Claims**

**1. Qualified Immunity**

As a further threshold matter, the Court addresses Defendants' argument that they are entitled to qualified immunity and Plaintiffs' claims should be dismissed on that ground. Motion, at 22–23. Government officials are protected by qualified immunity from civil suit for discretionary functions performed in their official capacities unless "it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). To determine whether qualified immunity applies, "a district court must decide whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights." *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), as amended (Oct. 31, 2000) (emphasis original) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien*, 818 F.3d at 936 (internal quotation and citation omitted).

Here, Plaintiffs allege that housing Mendoza with known rival gang members and returning Mendoza to general population after his first attack violated specific CDCR gang management policies aimed at protecting inmates from gang violence. *See* SAC ¶¶ 78–82. Plaintiffs also maintain that returning Mendoza to general population after the first attack violated Section 3335 of Title 15 of the California Code of Regulations, which requires an inmate to be "immediately removed from the [general population] and placed in a Restricted Housing Unit" when their presence "presents an immediate threat to the safety of the incarcerated person or

others, endangers institution security, or jeopardizes the integrity of an investigation of alleged serious misconduct, criminal activity, or the safety of any person." CAL. CODE REGS. tit. 15 § 3335.

Defendants have qualified immunity here if it would not have been clear to a reasonable prison official that failing to follow CDCR's gang management policies and failing to place Mendoza in restricted housing pursuant to section 3335—when housing Mendoza and returning him to general population after his first attack—violated Mendoza's clearly established right to be protected from attacks by other inmates while incarcerated.[4] *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment); *Farmer v. Brennan*, 511 U.S. 825, 834 ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'") (quotation omitted). Because Plaintiffs allege Defendants' conduct violated specific policies aimed at protecting inmates' safety, an established right, it is not clear that Defendants acted as reasonable prison officials that would then have qualified immunity. The Court therefore DENIES Defendants' motion to dismiss Plaintiffs' section 1983 claims on qualified immunity grounds.

**2. Deliberate Indifference**

Defendants next argue that Plaintiffs fail to establish that Defendants acted with deliberate indifference, as required to state a claim for violation of the Eighth Amendment under section 1983. "The failure of a prison official to protect inmates from attacks by others from dangerous conditions at the prison only violates the Eighth Amendment . . . when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety." *Manzanillo v. Lewis*, 267 F. Supp. 3d 1261, 1269

---

[4] At the hearing on Defendants' motion to dismiss, defendants emphasized that section 3335 does not *require* that an inmate be put in restricted housing after a violent incident but requires prison officials to exercise discretion: officials must first determine whether an inmate poses "an immediate threat" to safety. CAL. CODE REGS. tit. 15 § 3335. Only if officials determine that the inmate's presence poses an immediate threat to safety must the inmate be placed in restricted housing. *Id.* But even if the statute makes restricted housing discretionary, it is still not clear that a reasonable prison official would have decided Mendoza's presence in general population did not pose an immediate threat to his safety.

(N.D. Cal. 2017) (citing *Farmer*, 511 U.S. at 832–34).

"[D]eliberate indifference [lies] somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer*, 511 U.S at 836. "On the one hand, deliberate indifference describes a more blameworthy state of mind than negligence—negligence, and even gross negligence, are not enough to trigger an Eighth Amendment violation. . . . On the other hand, a plaintiff is not required to show purposeful conduct to meet his burden of showing deliberate indifference." *Manzanillo*, 267 F. Supp. 3d at 1270 (citing *Farmer*, 511 U.S at 835–36). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (citation omitted). And where the plaintiff seeks damages against individual defendants for violation of the Eighth Amendment, the plaintiff "must set forth specific facts as to each individual defendant's deliberate indifference." *Sweet v. Hernandez*, No. C 02-1709 SI (PR), 2003 WL 21920921, at *4 (N.D. Cal. Aug. 6, 2003), aff'd, 107 F. App'x 775 (9th Cir. 2004) (quoting *Leer*, 844 F.2d at 633–34).

**a. Defendant Lopez Vargas**

Plaintiffs aver that Defendants Sergeant Lopez Vargas and Warden Santoro acted with deliberate indifference by failing to account for Mendoza's status as a gang dropout when housing him with other inmates. Plaintiffs contend Defendant Lopez Vargas "explicitly documented that Mr. Mendoza had been the victim of 'Battery with a Deadly Weapon,'" yet "approved Mr. Mendoza's return to general population using an administrative procedure designed for minor altercations – not deadly weapon attacks requiring use of force." SAC ¶ 87. But Plaintiffs do not allege that Defendant Lopez Vargas *knew* the risk posed to Mendoza in returning him to general population after the first attack, or knew of Mendoza's gang dropout status or Ochoa's gang membership, or, crucially, that Defendant Lopez Vargas actually drew the inference that Mendoza's gang dropout status would put him at heightened risk of harm by members of

Mendoza's former gang or rival gangs. Defendant Lopez Vargas's taking an "administrative shortcut," while perhaps irresponsible, does not alone amount to an Eighth Amendment violation. *Id.* ¶ 88.

And the heightened risk to Mendoza of returning to general population would not have been "obvious" to Defendant Lopez Vargas if he did not know of Mendoza's gang dropout status—particularly if Defendant Lopez Vargas believed Edmonds and Mendoza had agreed that the first attack resulted from a "misunderstanding," and that they could "continue to co-exist on the facility." ECF No. 22 ("Opposition"), at 13 (quoting *Farmer*, 511 U.S. at 842–43 & n.8; SAC ¶ 68). Defendants appear to concede that if Defendant Lopez Vargas had "a reason . . . to have actual knowledge that Mendoza was facing an ongoing, generalized safety risk from the general population," the risk may have been obvious. ECF No. 24 ("Reply"), at 4. But Plaintiffs did not plead those facts.

Because Plaintiffs have not alleged that Defendant Lopez Vargas acted with deliberate indifference under section 1983, Defendants' motion to dismiss is GRANTED as to Plaintiffs' section 1983 claim against Defendant Lopez Vargas.

If dismissal is warranted the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc) (quotation omitted). Here, Plaintiffs' complaint lacks allegations that Defendant Lopez Vargas knew of, and drew the inference, that Mendoza was at heightened risk of attacks because of his gang dropout status. But because this deficiency could be cured by amendment, the Court GRANTS leave to amend as to Plaintiffs' section 1983 claim against Defendant Lopez Vargas.

**b. Defendant Warden Santoro**

Plaintiffs' allegations as to Defendant Warden Santoro, however, fare better. Plaintiffs contend that Defendant Santoro actually knew that SVSP faced high levels of deadly violence between inmates; she knew that SVSP was critically understaffed, but failed to implement specific CDCR policies, and failed to respond to specific reports regarding inmate violence that, if acted

upon, would have resulted in Mendoza's placement in restricted housing, and would have prevented his death. *See* SAC ¶¶ 13–19; 94–98. For example, Plaintiffs allege:

> Warden Santoro personally received, reviewed, and approved the [CDCR Critical Incident Packages, or "CIQS packages"] documentation for each prior homicide at SVSP. Those CIQS packages documented recurring failures in weapon control, search protocols, housing procedures, and use of force review. By approving each CIQS, Warden Santoro personally confirmed that she had reviewed and understood each documented failure. Despite this accumulated, documented pattern of institutional violence, Warden Santoro personally failed to direct systemic corrective action capable of preventing the next killing.

*Id.* ¶ 13. Plaintiffs also allege:

> In March 2025, CDCR placed SVSP on "modified program" in response to a "surge in violence against staff and incarcerated persons." Warden Santoro was directly and personally involved in the implementation of the modified program at SVSP, including communications with CDCR headquarters regarding the violence crisis. The modified program constituted an institutional acknowledgment that existing measures were failing to protect inmates. . . . [T]he modified program documents her actual knowledge that violence was rampant and her failure – after the modified program was lifted – to implement any systemic reforms to address the root causes.

*Id.* ¶ 15. These allegations sufficiently support Plaintiffs' claim that Defendant Santoro acted with deliberate indifference in her handling of inmate violence at SVSP, which led to a violation of Mendoza's right to safety while incarcerated under the Eighth Amendment.

Because Plaintiffs have alleged that Defendant Santoro acted with deliberate indifference under section 1983, Defendants' motion to dismiss is DENIED as to Plaintiffs' section 1983 claim against Defendant Warden Santoro.

**3. Supervisory Liability**

Defendants also argue that Defendant Warden Santoro "and Other Supervisory Doe Defendants"[5] cannot be held liable for violations of Mendoza's Eighth Amendment rights because Plaintiffs do not allege those Defendants' first-hand involvement in the attacks on Mendoza by

---

[5] Though Defendants do not specify which Doe Defendants are "Supervisory Doe Defendants," or "Supervisory Does," the Court assumes the term means those Doe Defendants whose duties include supervising other employees at SVSP. *See* SAC ¶¶ 23–33 (describing oversight roles of Doe Defendants 1–45).

Edmonds and Ochoa. For example, Plaintiffs do not allege that Defendant Santoro "knew Mendoza, Edmonds, and/or Ochoa or that she had any knowledge that Mendoza was at risk of injury by Ochoa or any other inmate," and does not allege that Defendant Santoro was directly involved in responding to Edmond's October 14, 2025 attack on Mendoza. Motion, at 17.

Defendants construe the case law too narrowly. In the Ninth Circuit, "[a] defendant may be held liable as a supervisor under [section] 1983 if there exists *either* (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (emphasis added); *see id.* at 1208–10 (finding sufficient allegations that the Sheriff himself had been given clear notice by the Department of Justice of the specific unconstitutional conditions in the jails; that the Sheriff received numerous reports documenting inmate violence caused by the unconstitutional conduct of his deputies; and that the Sheriff ultimately acquiesced in these constitutional violations); *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (finding insufficient a pleading with "no allegation of a *specific* policy implemented by the Defendants or a *specific* event or events instigated by the Defendants that led to . . . purportedly unconstitutional searches."). Here, as discussed above, the complaint alleges the latter: that Defendant Santoro knowingly failed to implement specific policies and respond to specific reports of violence that would have provided inmates with safer housing conditions, and this failure caused Mendoza's death. Plaintiffs allege similarly detailed failures by Supervisory Doe Defendants. For example:

> As Associate Warden, Defendant DOE 1 was personally responsible for reviewing and approving – or directing modification of – all ICC classification decisions affecting high-custody inmates at SVSP, including housing and yard assignment decisions for gang-affiliated or gang-dropout inmates such as Mr. Mendoza. Defendant DOE 1 personally received ICC 128-G classification Chronos generated for Mr. Mendoza and possessed the authority to direct modification of housing assignments at any time. Defendant DOE 1 personally chose not to exercise this authority.

SAC ¶ 24. And:

> Defendants DOES 2 through 5 are Classification Staff Representatives ("CSRs") assigned to SVSP during the relevant period. CSRs are required . . . to independently review each

> incarcerated person's classification score and housing assignment on a periodic basis, and to recommend changes to housing or custody level when an inmate's score or institutional conduct requires it. Defendants DOES 2 through 5 conducted mandatory periodic classification reviews of Mr. Mendoza and were required to apply his documented violent history and gang dropout status to his housing determination. Each of Defendants DOES 2 through 5 personally reviewed Mr. Mendoza's Central File, personally understood the documented risk he faced based on that review, and personally failed to direct protective housing measures.

*Id.* ¶ 29. Plaintiffs' allegations as to the Supervisory Doe Defendants demonstrate a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1207.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' section 1983 claims against Defendant Warden Santoro and the Supervisory Doe Defendants.

### C. Negligence Claim – Defendants Warden Santoro and Supervisory Does

Defendants argue that Plaintiffs' negligence claim (SAC third cause of action) against Defendant Warden Santoro and Supervisory Doe Defendants must be dismissed because California Government Code Sections 820.8, 820.2, and 845.2 bar the claims. The Court addresses each statute in turn.

The Government asserts that Defendant Santoro and Supervisory Doe Defendants cannot be held liable for negligence because "a public employee is not liable for an injury caused by the act or omission of another person." Cal. Gov. Code § 820.8. But California Government Code section 820.8 does not "exonerate[] a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." *Id.*; *see Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 799 (9th Cir. 2018) ("[Section] 820.8 is inapplicable because . . . appellees do not rely on vicarious liability, but, rather, rely on the supervisors' culpable action or inaction that proximately caused their injuries."); *J.T. v. City & Cnty. of San Francisco*, No. 23-CV-06524-LJC, 2024 WL 3012791, at *18 (N.D. Cal. June 13, 2024) (finding no immunity under section 820.8 where plaintiffs "alleged that each of the individual defendants either ordered or approved and acquiesced to the mass arrest at issue, with no indication in the Amended Complaint that such an arrest was supported by probable cause"); *Cravotta v. Cnty. of Sacramento*, 717 F. Supp. 3d 941, 962 (E.D. Cal. 2024) ("[Section] 820.8 does not apply [if] the claims against [defendant] are based

on his own supervision and negligence.") (quotation omitted).

As discussed *supra*, Plaintiffs do not allege Defendant Santoro and Supervisory Doe Defendants are vicariously liable for the acts of others whom they supervised. Plaintiffs instead allege specific acts and failures to act by Defendant Santoro and Supervisory Doe Defendants that proximately caused Mendoza's death. *See* SAC ¶¶ 11–21, 23–33. Government Code section 820.8 therefore does not immunize Defendant Santoro and Supervisory Doe Defendants from liability for Plaintiffs' negligence claim.

Defendants next argue that Defendant Warden Santoro and Supervisory Doe Defendants are immunized from negligence liability for "basic policy decisions" under California Government Code sections 820.2 and 845.2. Motion, at 20–21. The "basic policy decisions" for which they argue Defendant Santoro and Supervisory Doe Defendants are not liable under section 820.2 include Defendant Santoro's alleged failure to (1) "establish or enforce supervisory review procedures [to ensure Compatibility Chronos were not misused to resolve weapon-involved incidents]"; (2) "to train staff [on the mandatory requirements of title] 15, section 3335"; (3) "to convene and chair IERC[6] reviews [as mandated] by [the CDCR Department Operations Manual ("DOM")] section 51020.19"; (4) "to submit emergency staffing requests despite documented chronic understaffing"; (5) "to implement systemic reforms [after the March 2025 modified program was lifted]"; and (6) "to direct corrective action [following each of the seven prior homicides at SVSP]." *Id.* (quoting SAC ¶ 104).

The Court first turns to section 820.2, which states, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. "Immunity [under section 820.2] is reserved for those '*basic policy decisions* [that have] . . . been [expressly] committed to coordinate branches of

---

[6] Although the Court takes judicial notice of California Code of Regulation, Title 15, section 3268(19), *see* Motion, at 13 n.1; Fed. R. Evid. 201(b)(2), that section does not explicitly apply only to uses of force "against a correctional employee," such that it would necessarily exclude review of the use of force *by* a correctional officer against an inmate to intervene in an attack against another inmate. *Id.* As such, the Court does not adopt Defendants' interpretation of the statute.

government,' and as to which judicial interference would thus be 'unseemly.'" *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (quoting *Johnson v. State*, 69 Cal. 2d 782, 793 (1968)) (emphasis original). But "there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." *Id.* (quoting *Johnson*, 10 Cal. 4th at 796). "Moreover, . . . immunity applies only to *deliberate and considered* policy decisions, in which a '[conscious] balancing [of] risks and advantages . . . took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision." *Id.* (quoting *Johnson*, 10 Cal. 4th at 795 n.8) (emphasis original).

Here, Plaintiffs do not allege that Defendant Warden Santoro and Supervisory Doe Defendants considered and declined to implement "quasi-legislative" policies with which it would be "unseemly" for the Court to interfere. *Caldwell*, 10 Cal. 4th at 981. Rather, Plaintiffs allege that Defendant Santoro and Supervisory Doe Defendants were required, but failed to correctly carry out, various mandatory policies and duties that were already established at the time of the attacks on Mendoza. *See* SAC ¶¶ 11–21; 23–33. These failures were departures from policies previously decided by CDCR, which were merely to be implemented by wardens and prison officials throughout the state, or departures from existing California regulations, such as California Code of Regulations, Title 15, section 3335. *See Est. of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194, 1213 (E.D. Cal. 2005) (holding that "820.2 immunity does not apply to any liability arising out of the failure to comply" with "mandatory duties imposed by California law"). Defendant Santoro and Supervisory Doe Defendants are not immune from liability under section 820.2 for their alleged ministerial failures to follow existing CDCR policies and state law, as pleaded in Plaintiffs' complaint. *See Miles v. Cnty. of Alameda*, No. 3:22-CV-06707-WHO, 2023 WL 8853717, at *18 (N.D. Cal. Dec. 21, 2023) ("[T]he jail employee's decision to house Decedent and [the cellmate who killed him] together was a ministerial determination that is not entitled to immunity under Section 820.2.") (quotations and citations omitted).

Next, the Court turns to Defendants' argument that section 845.2 immunizes Defendant Warden Santoro and Supervisory Doe Defendants from negligence stemming from their failure to

provide sufficient staffing. *See* Motion, at 12. Section 845.2 states, "Except as provided in Chapter 2 (commencing with Section 830), neither a public entity nor a public employee is liable for failure to provide a prison, jail or penal or correctional facility or, if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein." Cal. Gov. Code § 845.2. By its express language, section 845.2 bars Plaintiffs from pursuing a negligence claim against Defendant Santoro and Supervisory Doe Defendants on a theory that they failed to adequately staff SVSP. But Plaintiffs' opposition confirms that their "negligence claim in this case does not rest on a failure-to-staff theory"; the "SAC's allegations regarding chronic understaffing . . . are pleaded as evidence of notice and of the institutional conditions in which Defendants acted, not as the independent duty whose breach grounds the claim." Opposition, at 23. Thus, the Court need not dismiss Plaintiffs' negligence claim on this ground.

Defendants then argue that Defendant Warden Santoro and Supervisory Doe Defendants are immune from negligence liability under section 820.8, discussed above, because Ochoa's assault on Mendoza was "an independent intervening act which was the actual ca[u]se of Mendoza's death." Reply, at 11. But as discussed, Plaintiffs do not seek to hold Defendant Santoro and Supervisory Doe Defendants liable for Ochoa's conduct, but instead for their own alleged failures that gave rise to Ochoa's attack on Mendoza. Defendants' "intervening act" argument thus does not provide a basis for dismissing Plaintiffs' negligence claim under section 820.8.

California Government Code Sections 820.8, 820.2, and 845.2 do not bar Plaintiffs' negligence claim against Defendant Santoro or the Supervisory Doe Defendants. The Court therefore DENIES Defendants' motion to dismiss Plaintiffs' negligence claim under sections 820.8, 820.2, and 845.2.

### D. Government Claims Act

Defendants argue Plaintiffs' claims against Defendant Warden Santoro should be dismissed for the additional reason that Plaintiffs did not satisfy the Government Claims Act before bringing this action with state law causes of action. Motion, at 15. Before bringing state law claims for damages against CDCR employees, Plaintiffs were required to properly present to CDCR a claim under the Government Claims Act. *See* Cal. Gov. Code §§ 905; 945.4; *State v.*

*Superior Ct.*, 32 Cal. 4th 1234, 1239 (2004) ("[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."). "The purpose of the claim presentation requirement 'is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."'" *Plata v. City of San Jose*, 74 Cal. App. 5th 736, 748 (2022) (quoting *City of San Jose v. Superior Court* 12 Cal. 3d 447, 455 (1974)). "Consequently, a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'" *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004) (quoting *Shoemaker v. Myers*, 2 Cal. App. 4th 1407, 1426 (1992)). And "[a]s the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions . . . , the claims statute should not be applied to snare the unwary where its purpose has been satisfied." *Id.* (internal quotations and citations omitted). The Government Claims Act requires, among other things, that a plaintiff identify to the defendant public entity "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known." Cal. Gov. Code § 910(e).

Here, Plaintiffs submitted two Government Claims to CDCR[7]: one on behalf of Mendoza's estate, and one on behalf of Plaintiff Noemi Mendoza individually. Opposition, at 9. The claims Plaintiffs submitted describe the two October 14, 2025 attacks on Mendoza at SVSP and precisely when they took place; identify the perpetrators of the attacks against Mendoza; describe CDCR's and SVSP employees' responses to the attacks; and explain the heightened danger Mendoza faced from other gang members as a gang dropout at SVSP. *See* Plaintiffs' RJN, Exs. A & B; Defendants' RJN, Exs. 1 & 2. Defendants' only argument as to the insufficiency of Plaintiffs' Government Claims is that Plaintiffs did not specifically identify Defendant Warden Santoro by name or by her position as warden of SVSP.

While the claims Plaintiffs submitted to CDCR do not identify individual CDCR

---

[7] The Court GRANTS the parties' respective requests for judicial notice of the Government Claims that Plaintiffs submitted to CDCR on October 20, 2025, and October 21, 2025. Fed. R. Evid. 201(b); ECF No. 22-1 (Plaintiffs' request for judicial notice ("RJN")); ECF No. 21-1 ("Defendants' request for judicial notice ("Defendants' RJN")).

employees by name, they list CDCR employees by job category. The claim Plaintiffs submitted to CDCR on behalf of Mendoza's estate lists employees of CDCR who caused Mendoza's death as "[1] Classification and housing officers responsible for Mendoza's placement and failure to rehouse following the 12:30 p.m. assault; [2] Correctional officers and sergeants on duty during both the 12:30 p.m. and 5:15 p.m. assaults; [3] Supervisors overseeing the housing unit, yard, and medical response; and [4] Medical staff responding to both incidents." Plaintiffs' RJN, Ex. A; Defendants' RJN, Ex. 1.

Likewise, the claim Plaintiff Noemi Mendoza submitted to CDCR on her own behalf lists employees of CDCR who caused Mendoza's death as "[1] Classification and housing officers responsible for inmate placement decisions and failure to rehouse after the earlier assault; [2] Correctional officers and sergeants on duty during the 12:30 p.m. and 5:15 p.m. attacks; [3] Supervising lieutenants and captains overseeing the housing unit and response; and [4] Medical and custody personnel involved in both incidents." Plaintiffs' RJN, Ex. B; Defendants' RJN, Ex. 2.

The claims Plaintiffs submitted to CDCR gave CDCR fair notice of Plaintiffs' allegations against CDCR's employees, and satisfied the purpose of the Government Claims Act by providing CDCR with notice of Plaintiffs' claims. *See K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (finding sufficient notice under the Government Claims Act where claims presented to the defendant named one defendant and "'other unidentified employees' as alleged perpetrators" of the harm). As in *K.T.*, here, Plaintiffs "told [CDCR] what happened, when it happened, and who saw it happen. It is therefore not clear how counsel's oversight [in failing to name Warden Santoro specifically] deprived [CDCR] of the chance to investigate; it had everything else—including all witnesses and [CDCR employees] named here—at its fingertips." *Id.* Defendant's motion to dismiss is DENIED on this ground.

**E. Doe Defendants**

Defendants also argue that Plaintiffs' claims against certain Doe Defendants must be dismissed because they are improperly pleaded under Federal Rule of Civil Procedure 8. Motion, at 24–25. Plaintiffs allege that the Doe Defendants (various SVSP employees) failed to undertake

required duties to ensure Mendoza's safety while at SVSP. Defendants challenge Plaintiffs' pleading as to Doe Defendants 46–50, categorized as "Medical and Emergency Response Staff," on the ground that Plaintiffs fail to plead specific actions by this category of Doe Defendants that resulted in Mendoza's death. *Id.* at 24. Plaintiffs state that Does 46–50 "were responsible for responding to and providing emergency care following the attacks on Mr. Mendoza on October 14, 2025." SAC ¶ 34. Plaintiffs further allege,

> Upon information and belief, Defendants failed to ensure Mr. Mendoza received a comprehensive medical evaluation following the first attack, including: (a) Documentation of all injuries sustained; (b) assessment of Mr. Mendoza's psychological state after being attacked with a deadly weapon; (c) evaluation of whether Mr. Mendoza required protective housing for his safety; and, (d) medical recommendations regarding Mr. Mendoza's housing placement.

SAC ¶ 67. Even when construed in the light most favorable to Plaintiffs under *Manzarek*, 519 F.3d at 1031, these allegations are not "sufficient to raise a plausible inference" that the medical and emergency response staff at SVSP contributed to Mendoza's death. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions[.]" *Lopez v. City & Cnty. of San Francisco*, No. 25-CV-04390-LB, 2025 WL 2223431, at *2 (N.D. Cal. Aug. 5, 2025) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The SAC's conclusory statement that "Medical and Emergency Response Staff" are "responsible in some manner for the occurrences herein alleged" is too speculative to state a claim for relief. The remaining allegations that could apply to the Medical and Emergency Response Staff Doe Defendants (SAC ¶ 67, excerpted above), are pleaded as to all "Defendants," and do not allege specific actions or omissions for which the Medical and Emergency Response Staff Doe Defendants are liable. Plaintiffs must provide more specific facts to show they are plausibly entitled to relief from the actions of the Medical and Emergency Response Staff Doe Defendants. Because these insufficient pleadings could be cured by alleging additional facts, however, the Court grants leave to amend the SAC as to the Medical and Emergency Response Staff Doe Defendants. *See Lopez*, 203 F.3d at 1127.

Accordingly, Defendants' motion to dismiss Plaintiffs' claims against the "Medical and

Emergency Response Staff," Doe Defendants 46–50, is GRANTED with leave to amend.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with leave to amend as to Plaintiffs' section 1983 claim as to Defendant Lopez Vargas and as to Plaintiffs' claims against the Medical and Emergency Response Staff Doe Defendants. With respect to all other claims, Defendants' motion to dismiss is DENIED. Plaintiffs shall file an amended complaint within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: November 3, 2026

Noël Wise
United States District Judge